[No. 8655.]

RAYADO COLONIZATION CO. ET AL. v. RIEKE ET AL.

1.  CORPORATIONS—*Personal Liability of Officers—Body Judgment.* Directors of a corporation who fraudulently dispose of the corporate properties, which pass to innocent parties, are personally liable to the

creditors of the corporation for the value of the assets so dissipated. So where such directors fraudulently transfer such properties to another corporation which is their mere creature and dummy. And the corporation receiving the same is also liable for the value thereof.

Execution was allowed against the body of the conspiring directors.

2. EQUITY PRACTICE—*Parties.* Several judgment creditors of a corporation were permitted to maintain a joint action against the corporation, its directors, and a second corporation, organized by the directors, to which the assets of the original corporation had been fraudulently transferred.

*Error to Denver District Court.* Hon. C. C. BUT-LER, Judge.

Mr. ROY E. DICKERSON, and Mr. JOHN R. SMITH, for plaintiffs in error.

Messrs. BARNETT & CAMPBELL, and Mr. N. M. CAMP-BELL, for defendants in error.

Mr. JUSTICE SCOTT delivered the opinion of the court.

This is an action by the defendants in error for equitable relief as against the plaintiffs in error.

The complaint sets up the several judgments of defendants in error, against the plaintiff in error, the Hagadorn Investment Company, including that of Henry J. Rieke et al. reviewed by this court in the case of *Hagadorn Company v. Rieke,* 60 Colo. 555.

The remaining judgments against the Hagadorn Company grew out of similar transactions, and under a like state of facts as considered in that case. These were fraudulent land sales by that company. The conduct of the company in the transactions was found by this court in the reported case to be:

"The defendant company, acting through its authorized agents and representatives in making these contracts of sale, carried out a fixed, definite plan of wilful fraud, misrepresentation and deceit, upon which the plaintiff acted and by means of which alone he was in-

duced to act. In short, the transaction was nothing more or less than a plain steal, skillfully inaugurated and artfully consummated through a subtle system of cunning and deception, by which a fraud so bold and daring in its conception was perpetuated that it shocks every moral sense. This conclusion is supported not only by a preponderance of the testimony, but by testimony of a most convincing and satisfactory character. Indeed, it is so established beyond all reasonable doubt.''

The relief asked in the present action was for a judgment against the defendants and each of them in the total sum of $51,914.00; the appointment of a receiver for the two corporation defendants; that the said corporations, their officers and agents, be restrained from disposing of any of the corporate assets; for an order commanding restitution by the defendant, The Rayado Company, and the individual defendants, to the Hagadorn Company, of any and all property of said company alleged to have been wrongfully and fraudulently converted by them, and for body judgments against each of the individual defendants.

The trial court made findings of fact, among which are the following:

''That judgments were duly rendered by the District Court of Conejos County, Colorado, against the defendant, The Hagadorn Investment Company, in favor of the plaintiff and intervenors in the sum and amounts, respectively, as follows, to-wit:

(a) That on December 5th, 1911, judgment was rendered in favor of the plaintiff, H. J. Rieke, in the principal sum of thirty-six thousand and fifty dollars ($36,050.00), together with costs in the amount of one hundred and sixty-four dollars and twenty-eight cents ($164.28).

(b)   That on December 5th, 1911, judgment was rendered in favor of the intervenor William Rieke, in the principal sum of twelve thousand eight hundred dollars ($12,800.00) and costs in the amount of thirty-nine dollars and twenty-three cents ($39.23).

(c)   That on March 13th, 1911, judgment was rendered in favor of the intervenor Ben R. Sinn, in the principal sum of nine thousand and fourteen dollars ($9,014.00) and the costs in the sum of forty-five dollars and twenty-eight cents ($45.28).

(d)   That on March 13th, 1911, judgment was rendered in favor of intervenor Edward J. Sinn, in the sum of eight thousand eight hundred dollars ($8,800.00), together with costs in the sum of twenty-two dollars and ninety-five cents ($22.95).

(e)   That on March 13th, 1911, judgment was rendered in favor of intervenor John L. Jones, in the sum of eight thousand and eight hundred dollars ($8,800.00), together with costs in the sum of twenty-four dollars and forty-five cents ($24.45).

That the allegations of the complaint and the petition of intervention are sustained; that both the said defendant companies, the said The Hagadorn Investment Company and the said The Rayado Colonization Company, were dummy companies managed as the private affairs of the three defendants, A. G. Hagadorn, F. J. Hagadorn and J. D. Hagadorn; that the said A. G. Hagadorn is the father of the defendants, F. J. Hagadorn and J. D. Hagadorn; that the Rayado Colonization Company is but a creature of the defendants, The Hagadorn Investment Company, A. G. Hagadorn, F. J. Hagadorn and J. D. Hagadorn, and was promoted, organized, and financed with the funds of the said The Hagadorn Investment Company by and through the acts of the said defendants, A. G. Hagadorn, F. J. Hagadorn and J. D.

Hagadorn, who constituted the entire board of directors, and exercised absolute control and management of both the said corporations when the plaintiff's and intervenor's rights accrued against both said companies.

That the defendants, A. G. Hagadorn, F. J. Hagadorn and J. D. Hagadorn conspired together to declare false and fictitious dividends, and withdraw valuable securities and substituted therefor worthless securities, and to prefer themselves as creditors of The Hagadorn Investment Company, and that they, and the defendant The Rayado Colonization Company, conspired together to take from the said The Hagadorn Investment Company its assets, and to conceal the same from the plaintiff and said intervenors, so as to hinder, delay and defraud the plaintiff and the intervenors herein, and that said defendants accomplished the purpose of said conspiracies.

That the defendant The Hagadorn Investment Company by and through the acts of the defendants, A. G. Hagadorn, F. J. Hagadorn and J. D. Hagadorn, constituting its Board of Directors, and practically all its stockholders, on or about December 1st, 1910, declared, and on or about March 24th, 1911, distributed a two hundred per cent (200 per cent) dividend in the total sum of forty-nine thousand, nine hundred and eighty dollars ($49,980.00) and that of said dividend, A. G. Hagadorn received assets of the value of twenty thousand, six hundred dollars ($20,600.00) and the defendant J. D. Hagadorn received of the assets twenty-two thousand dollars ($22,000.00) and the defendant F. J. Hagadorn received assets of the value of two thousand dollars ($2,000.00).

That subsequent to the declaration and distribution of said dividend, as mentioned in finding 4 above, and on March 25th, 1911, the defendant, A. G. Hagadorn, converted, and was suffered and aided by his co-directors,

the said J. D. Hagadorn and F. J. Hagadorn, to convert, and with their consent did convert to his own use, the following additional assets of the said The Hagadorn Investment Company and in the following manner:

(a)   A note of the defendant, The Rayado Colonization Company, payable to the defendant The Hagadorn Investment Company in the principal sum and of a value of eight thousand, two hundred and forty-three dollars and seventy-one cents ($8,243.71), which note was taken by A. G. Hagadorn, in exchange for a note of one J. M. Webber for the sum of eight thousand dollars ($8,000.00); that the difference in the face value of the said notes was charged off to "unearned profits" of the company; that said Webber note was worthless and of no value whatever.

(b)   That on a balance of indebtedness claimed to be due him the said A. G. Hagadorn, from The Hagadorn Investment Company, in the sum of thirty-nine hundred and fifty-seven dollars and two cents ($3,957.02), the said defendant preferred himself as creditor to that extent, and took in satisfaction therefor in assets of the said company to the value of said amount, to-wit, thirty-nine hundred, and fifty-seven dollars and two cents ($3,957.02).

That subsequent to the declaration and distribution of said dividend mentioned in finding "4" above, the defendant J. D. Hagadorn converted and was suffered by his said co-directors, A. G. Hagadorn and F. J. Hagadorn, to convert to his own use, and by them aided to convert, the following additional assets of the Hagadorn Investment Company.

(a)   That on March 25th, 1911, J. D. Hagadorn, to satisfy a note claimed to be due him by the said company, in the principal sum of twenty-five hundred dollars ($2,500.00), preferred himself as creditor of said com-

pany by converting to his own use, the assets of said company of the value of twenty-five hundred dollars ($2,500.00).

(b) That on October 25th, 1911, the said J. D. Hagadorn converted to his own use, a certain note of the Stark-Hagadorn Irrigation Company, of a value of ten thousand seven hundred and forty-five dollars and twenty-one cents ($10,745.21), and a portion of a certain account of one Chas. W. Wells, of a value of one hundred and thirty-four dollars and twenty-five cents ($134.25), both the property of said company and amounting to the sum of ten thousand, eight hundred and seventy-nine dollars and forty-six cents ($10,879.46) in value, and gave to the said company in exchange for said assets, two notes of one J. M. Webber, one for the sum of seventy-five hundred dollars ($7,500.00) and one for the sum of thirty-five hundred dollars ($3,500.00), and the court finds that the said notes of J. M. Webber were and are worthless and of no value whatever.

And the court further finds that the declaration of said pretended dividend, and the further conversion of the assets of said The Hagadorn Investment Company, above found, were all part of a general scheme to hinder, delay, and defraud plaintiff and intervenors in collecting their claims and demands against The Hagadorn Investment Company, and did so operate; that the declaration and distribution of the said pretended dividend and the said conversion of the said company's assets by the said defendants, A. G. Hagadorn, J. D. Hagadorn and F. J. Hagadorn, by preferring themselves as creditors and otherwise, as above found, were unlawful and fraudulent as against the plaintiff and intervenors, and rendered said company wholly insolvent and was the sole cause of said insolvency, and wholly obliterated its

capital stock (capital); and that the said company practically ceased as a going concern about October, 1911.

That upon the rendition of said judgment in favor of plaintiff and intevenors, as found in finding "1" above, executions were duly issued out of the said District Court of Conejos County, Colorado, against the said The Hagadorn Investment Company, to the sheriff of said Conejos County, and to the sheriff of the City and County of Denver, Colorado and after diligent search were returned *nulla bona.*

That, in this, suit, and on the 5th day of August, 1913, a receiver was appointed for the said The Hagadorn Investment Company by this court; that, as appears from the said receiver's report herein filed, as well as from the said receiver's testimony, and the testimony of other witnesses, said company has no assets of any value whatever, and the court so finds; and the court also further finds that the notes of the said J. M. Webber given the said company by the defendants, J. D. Hagadorn and A. G. Hagadorn, in exchange for the assets of the company converted by them, and which said notes of J. M. Webber were and are, as above found, worthless, and now among the assets turned over to the receiver.

That the aggregate value of the assets of the said The Hagadorn Investment Company wrongfully, unlawfully and fraudulently converted by said defendant, A. G. Hagadorn, J. D. Hagadorn and F. J. Hagadorn, with interest due thereon, far exceeds the aggregate amount due plaintiff and intervenors on their said judgments, with interest due thereon, together with costs taxed in and under said judgments, and costs to be taxed in this proceeding.

The court finds that the said assets of the said The Hagadorn Investment Company, converted by said dividends and otherwise by defendants have passed into the

hands of presumably innocent parties, and none is accounted for herein; and that plaintiffs are entitled to recover, and should be awarded, money judgments for the face value of said assets converted, so far as is necessary to fully satisfy the said judgments and each of them.

That the defendant, The Rayado Colonization Company, was promoted, incorporated and financed by the defendants, A. G. Hagadorn, F. J. Hagadorn and J. D. Hagadorn, by and with the funds of the defendant, The Hagadorn Investment Company, by appropriating the sum of three thousand two hundred and forty-three dollars and seventy-one cents ($3,243.71) of the funds of the said The Hagadorn Investment Company for said purpose, and as evidenced by a certain promissory note of The Rayado Colonization Company.

(a)    That practically all the payments on the said The Rayado Colonization Company's sole asset, to-wit, "the Rayado ranch," were made by and with the assets of the said The Hagadorn Investment Company, taken under said pretended dividends by the said A. G. Hagadorn, J. D. Hagadorn and F. J. Hagadorn; said assets consisting of the following assets and of the following value:

Clarence W. Burd.....................Note for $8,250
Lee F. Monical .....................:..Note for   1,250
Geo. F. Payn ......................,.Note for   2,750
Victor L. Forseberg .................Note for   3,500
John Webber ........................Note for   2,500
John Koester, Jr. ....................Note for   3,980
C. S. Lark .........................Note for   4,200
J. H. Reed ........................Note for   2,750
Anfin Apland .......................Note for   2,000
F. M. Stubblefield ..................Note for   4,800
Oscar O. Vaughn ..................:.....Note for   1,100
Frank B. Ellund .....................Note for     800

J. H. Lee ...........................Note for  2,100

The said assets mentioned in paragraphs 12, and 12 (a), were taken and used by The Rayado Colonization Company on or about March 25th, 1911, and that the said company has had the use thereof since said date.

That all of said assets converted by the said defendants to the use of The Rayado Colonization Company amounted to forty-three thousand two hundred and twenty-three dollars and seventy-one cents ($43,223.71).

(b)   That all of the said assets have, by the said The Rayado Colonization Company and the A. G. Hagadorn, J. F. Hagadorn and J. D. Hagadorn, been endorsed and conveyed to third parties.

(c)   That the said The Rayado Colonization Company, defendant has hereinabove been found to be the mere creature of said The Hagadorn Investment Company, and the dummy creature of the said defendants, A. G. Hagadorn, J. D. Hagadorn and F. J. Hagadorn and is jointly and severally liable, together with the other said defendants, to the plaintiff and the intervenors and each of them for the said sum of forty-three thousand two hundred and twenty-three dollars and seventy-one cents ($43,223.71), together with interest thereon at the rate of eight per cent (8 per cent) per annum from March 25th, 1911, or so much thereof as is necessary to satisfy the said judgments and each of them.

(d)   That execution should  be issued therefor against the said company for the sum of forty-three thousand two hundred and twenty-three dollars and seventy-one cents ($43,223.71), with interest thereon at eight per cent (8 per cent) from March 25th, 1911, or for so much thereof as is necessary to satisfy said judgments and each of them.

That the said The Rayado Colonization Company should be restrained from attempting to sell, mortgage,

convey or in any wise encumber its property or assets until the judgment herein and hereby rendered is fully paid and the judgments are satisfied of record and until the further order of this court.

That the acts of defendants, J. D. Hagadorn and F. J. Hagadorn, in committing the torts complained of, are irreconcilable with a lawful purpose, and exclude from consideration by the court any consideration as to the personal intent of said defendant, J. D. Hagadorn and F. J. Hagadorn, or either of them; that said acts compel the court to find, and the court doth find, that the said defendants, J. D. Hagadorn and F. J. Hagadorn, and each of them, were guilty of fraud and wilful deceit in the odious sense as defined by the statutes in such case made and provided, in performing and committing said acts, and in committing the torts complained of.

The court further finds that after allowing as a credit upon the said several judgments and each of them, of plaintiff and intervenors rendered by the District Court of Conejos County, Colorado, the several amounts represented by the notes in the hands of the receiver of The Hagadorn Investment Company, herein found, should be surrendered and cancelled, and the several amounts herein found be satisfied and liquidated by foreclosure proceedings upon obligations assumed by plaintiff and intervenors; that there is due by way of principal, interest and costs upon each of said judgments, the following total sums, to-wit: Upon the judgment of Henry J. Rieke the sum of forty-six thousand and fifty-six dollars and fifty-four cents ($46,056.54); upon the judgment of William Rieke the sum of sixteen thousand three hundred and twenty-eight dollars and seventy cents ($16,328.70); upon the judgment of Ben R. Sinn the sum of five thousand six hundred and sixty-four dol-

lars and eighty-three cents ($5,664.83); upon the judgment of Edward J. Sinn the sum of one thousand three hundred and sixty dollars and fifty-one cents ($1,360.51); and upon the judgment of John L. Jones the sum of five thousand three hundred and fifty-two dollars and fifty-one cents ($5,352.51)."

Judgment was rendered accordingly, including a body judgment against the defendants F. J. Hagadorn and J. D. Hagadorn.

Subsequently the court upon proof of foreclosure and cancellation of notes and mortgages, which had been executed by or the payment of which had been assumed by the several plaintiffs, the amount of such in each case was credited upon the judgment theretofore rendered, leaving the judgment for the amounts paid in cash together with interest.

It appears that A. G. Hagadorn is the only one of the plaintiffs in error seemingly concerned in this review, as counsel say in their opening brief that "A. G. Hagadorn is the only one of the plaintiffs in error who is really prosecuting the writ, and the abstract of record was prepared primarily in his behalf."

There does not seem to be any serious attempt to question the findings of the court as to all of the miserable frauds practiced by the Hagadorns and their companies.

The only contention which justifies consideration is that the testimony does not justify the findings of the court that A. G. Hagadorn was a participant in and consented to the frauds recited.

But it is undisputed that A. G. Hagadorn was from its organization and during all the unspeakably fraudulent transactions, a stockholder, director, and president of the Hagadorn Investment Company, and that he was also a stockholder, director and president of the Rayado

Colonization Company, from its organization up to the time of and after all the frauds. As president he called all the meetings of the two companies at which the frauds were committed, and at such meetings he voted for the same as director. Not only for the declaration of the fraudulent dividend which bankrupted the company, but for the exchange of the worthless notes for those of value to his individual benefit, but he participated in the fraudulent dividend to the extent of a twenty thousand six hundred dollar note, which he endorsed to the Rayado Colonization Company.

It is difficult to understand what acts and conduct could make him more responsible or liable for the frauds than such acts and conduct.

Indeed while this court has declared the conduct of the officers of the Hagadorn Company in the original land sales to be a steal, it is plain that the conduct of these officers, to avoid the effects of the judgment and obligations growing out of such steal, were more infamous if possible than the original.

But it is contended that A. G. Hagadorn protested against the dividend. He accepted the $20,600.00 note to himself, and transferred it to the Rayado Company, in which he was likewise interested, and of which he was also the president. J. G. Hagadorn testifies as to the alleged protest as follows:

"Q. Well, what ground did he have for protesting against it?

A. Just said it wasn't cash.

Q. Just said it wasn't cash.

A. Yes.

The Court: Was that the only reason he assigned?

The Witness: No he says that a dividend, 'When you declare a dividend, you should have your dividend

in cash to pay your stockholders in cash,' and that he would not have it, he would not take it, and he didn't.

Q.    That is all he said, is it?

A.    Well, I don't know.  He said quite a little more than that, but that is all—

Q.    Was that the substance of what he said?

A.    Yes.''

And A. G. Hagadorn testified as follows:

''Q.    When did you next hear, and what did you next know about this dividend matter?

A.    Well, I kept insisting on my money, and they kept 'standing me off,' and it was suggested, 'Well, we have got some dividends here we can turn over; you can take those,' and I says, 'Not much'; I says, 'How did you come to declare dividends?'  Well, then, they told me what they had done.  'Well,' I says, 'I won't accept those, not one of them,' I told you that in the start, and I stand right on my proposition.''

Thus it is plain that he made no protest as to declaring the fraudulent dividend, but did protest against the dividend being paid in notes, for the reason that he wanted the cash.

The findings of the trial court are fully sustained by the evidence.

It is unnecessary to cite authorities to sustain the judgment of the court based upon such findings.

The judgment is affirmed.

WHITE, C. J., and GARRIGUES, J., concur.

Decided February 5, A. D. 1917.  Time granted to apply for rehearing.  No petition filed.